IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM J. O'BRIEN, III,<br>Plaintiff, | :<br>:<br>: |
| v. | : CIVIL ACTION NO. 18-CV-1787 |
| THE UNITED STATES OF AMERICA<br>FEDERAL GOVERNMENT, *et al.*,<br>Defendants. | :<br>:<br>:<br>: |

## MEMORANDUM

**BEETLESTONE, J.**  JULY 31st, 2018

Currently before the Court is an Amended Complaint filed by Plaintiff William J. O'Brien, a prisoner incarcerated at FCI-Hazleton, which raises claims stemming from O'Brien's arrest and federal prosecution for various drug crimes and related crimes. For the following reasons, the Court will dismiss O'Brien's Amended Complaint.

### I. FACTS[1]

On January 20, 2015, O'Brien was indicted in the Eastern District of Pennsylvania on twenty-six counts of distributing controlled substances and one count of conspiracy to distribute controlled substances in connection with his medical practice. *See United States v. O'Brien*, Crim. A. No. 15-21-1 (E.D. Pa.). He was arrested pursuant to a bench warrant, and subsequently arraigned on February 3, 2015. *Id.* at ECF No. 6. On July 14, 2015, he was charged in a second superseding indictment with additional charges. *Id.* at ECF No. 74.

On June 28, 2016, after a nearly six-week jury trial presided over by the Honorable Nitza I. Quiñones Alejandro, O'Brien—who represented himself at trial[2]—was found guilty of all but

---

[1] The following allegations are taken from O'Brien's Amended Complaint and the public docket for his underlying criminal proceeding.

1

four counts of the 127-count second superseding indictment. *Id.* at ECF No. 560. On October 7, 2016, Judge Quiñones sentenced O'Brien to a term of 360 months of imprisonment, a term of supervised release, and restitution. *Id.* at 637. The Third Circuit Court of Appeals recently affirmed O'Brien's convictions. In its opinion, the Third Circuit noted that "[a] parade of witnesses, a confidential informant, videotape evidence, and expert testimony indicated that O'Brien had prescribed oxycodone and methadone to numerous individuals, including [an individual who died], outside the usual course of professional practice and for no medical purpose." *United States v. O'Brien*, Appeal No. 16-3814 (3d Cir. Jun 19, 2018 Opinion at 4).

O'Brien's Amended Complaint in the instant civil action raises claims against the following Defendants: (1) The United States of America; (2) Joshua Gill (Special Agent with the U.S. Department of Health and Human Services); (3) Ed McClusker (Special Agent with the U.S. Food & Drug Administration); (4) Bryan Lacy (Special Agent with the Federal Bureau of Investigation); (5) Dianna Huffman (Special Agent with the F.B.I.); (6) Heather Start Whelan Holt (Special Agent with the F.B.I.); (7) Cathy Carter (Special Agent with the F.B.I.); (8) Mary Beth Leahy (Assistant U.S. Attorney); (9) David Troyer (Assistant U.S. Attorney); (10) Kevin Kane (Retired from the F.B.I.); (11) Maryanne Murphy a/k/a Maryanne Hart; and (12) the "Eastern State District Court Federal Building." O'Brien's claims are all related to the federal criminal investigation and federal criminal proceedings that led to his convictions and incarceration.

O'Brien alleges that he developed a hyperbaric oxygyen therapy (HBOT) machine in 2006 and holds a patent on that technology. The HBOT was installed at the Lower Bucks Hospital

---

[2] At times, the Amended Complaint takes issue with counsel that had been appointed on O'Brien's behalf before he was permitted to proceed *pro se*. However, the Court does not understand O'Brien to be pursuing claims against his attorneys. Rather, he appears to have included this information as background.

2

(LBH) in Bristol, Pennsylvania and was used to treat patients. O'Brien claims that the United States Food and Drug Administration approved the technology for use three times between 2006 and 2010.

In January of 2010, LBH filed for bankruptcy. According to O'Brien, at that time, the HBOT technology was generating over $3 million to HyperOx, one of O'Brien's companies. In November of 2010, WJO Inc., another company owned by O'Brien filed for bankruptcy even though O'Brien alleges that the company was generating $6 million in annual income. O'Brien alleges that the bankruptcy court agreed that he could move the HBOT machine from LBH to WJO Inc.

On September 14, 2011, Agents Gill, McCusker, Carter, and Lacy, all of whom were apparently part of a Healthcare Fraud Taskforce investigating O'Brien, seized the HBOT machine from O'Brien's office. O'Brien notes that the machine was worth $900,000. As a result of the seizure, the bankruptcy court handling WJO's bankruptcy appointed a trustee who terminated O'Brien in July of 2012. Following his termination, O'Brien opened a solo practice under the name Dr. Bill O'Brien L.L.C. Apparently around this time, Carter retired from the F.B.I. and was replaced on the Taskforce by Huffman.

According to the Amended Complaint, in 2014, the Taskforce hired Murphy as a confidential informant "to target and infiltrate [O'Brien's] Family Practice Office." (Am. Compl. ECF No. 9 at 18, ¶ 34.)[3] O'Brien alleged that Murphy wore surveillance equipment to his office and was seen approximately twelve times over the course of a year. Murphy testified at O'Brien's criminal trial regarding her visits to his office. Special Agent Whelan-Holt also visited the office, apparently in an undercover capacity to conduct surveillance. O'Brien alleges that no

---

[3] The Court adopts the pagination assigned to the Amended Complaint by the CM-ECF docketing system.

3

warrant was procured for Murphy or Whelan-Holt's surveillance activities. O'Brien also alleges that, during one of Murphy's visits, he informed her that "'the pain management' part of the practice was being shut down because it was too demanding," but that this information was withheld by the Government until after Murphy's testimony at trial. (*Id.* ¶ 38.)

O'Brien's Amended Complaint focuses heavily on the grand jury proceedings that led to his indictment. O'Brien takes issue with Special Agents Huffman and Gill's testimony before the grand jury, as he believes that testimony was misleading and/or inaccurate in various respects, and failed to mention exculpatory information of which the agents were aware. One matter that concerns O'Brien is the fact that Huffman did not bring to the grand jury's attention a DEA report that he believes exculpates him, and which he received during the course of trial. He contends that Huffman admitted at trial that she and the other members of the task force failed to inform prosecutors of the report.

Relatedly, O'Brien contends that Assistant U.S. Attorney Leahy suborned perjury in connection with the grand jury proceedings. He also contends that Leahy improperly denied him bail, apparently by making false representations to the court. O'Brien was therefore detained and, accordingly, had to close his practice and lost income. During the course of his criminal proceeding, O'Brien successfully moved to proceed *pro se*. The Amended Complaint suggests that O'Brien was unhappy with the fact that Assistant U.S. Attorneys Leahy and Troyer opposed his motion to represent himself. The Amended Complaint also suggests that O'Brien believes witnesses at trial, including Kane, a retired FBI agent, provided misleading testimony that failed to include pertinent exculpatory information.

The Amended Complaint purports to raise claims based on the above facts for violation of O'Brien's constitutional rights pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403

4

U.S. 388 (1971), the Racketeer Influenced and Corrupt Organizations Act (RICO), and the Federal Tort Claims Act (FTCA). With regard to the FTCA claim, O'Brien alleges that he submitted an administrative claim form to the U.S. Department of Human Services, the FDA, the FBI, and the DOJ on May 30, 2017, and that his claim was denied on October 31, 2017. O'Brien seeks damages.

## II. STANDARD OF REVIEW

Although O'Brien has paid the filing fee in full, the Court has the authority to screen his Amended Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). It is legally baseless if "based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995), and factually baseless "when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal

5

Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Probation & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The Court may also dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002); *see also McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010). Furthermore, the Court may also consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As O'Brien is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. *Bivens* Claims

"A *Bivens* action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). Here, O'Brien is bringing claims against federal actors for investigating him, charging him, and prosecuting him.

#### 1. Claims Against the United States and the "Eastern State District Court Federal Building"[4]

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994). The United States and this Court, which is part of the judicial branch of the federal

---

[4] The Court understands the "Eastern State District Court Federal Building" to refer to this Court, as this Court is where O'Brien's federal criminal proceedings took place.

government, are entitled to sovereign immunity absent a waiver. *See Alston v. Admin. Offices of Delaware Courts*, 663 F. App'x 105, 108 (3d Cir. 2016) (per curiam) ("The USBCDD is part of the judicial branch of the Federal Government and, absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." (quotations and alteration omitted)); *Dambach v. United States*, 211 F. App'x 105, 107 (3d Cir. 2006) (per curiam) (explaining that "[a] *Bivens* action is not available against the United States or one of its agencies"). As sovereign immunity has not been waived to allow a plaintiff to raise federal constitutional claims against the federal government or its agencies in this context, the Court will dismiss O'Brien's *Bivens* clams against the United States and the "Eastern State District Court Federal Building." *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001) (explaining that *Bivens* "is concerned solely with deterring the unconstitutional acts of individual officers").

### 2. Claims Against Leahy and Troyer

O'Brien's claims against Assistant U.S. Attorneys Leahy and Troyer are based on those prosecutors' conduct during the course of grand jury proceedings and O'Brien's criminal proceedings. However, prosecutors are entitled to absolute immunity from liability for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Humphries v. Houghton*, 442 F. App'x 626, 628–29 (3d Cir. 2011) (per curiam) ("Defendant Houghton, a federal prosecutor, is entitled to absolute immunity for actions performed within her authority."). That immunity includes prosecutors' presentation of evidence before the grand jury. *See King v. Deputy Atty. Gen. Del.*, 616 F. App'x 491, 495 (3d Cir. 2015) (per curiam); *Michaels v. New Jersey*, 222 F.3d 118, 122 (3d Cir. 2000). Accordingly, there is

no legal basis for O'Brien's constitutional claims against Leahy and Troyer, so the Court must dismiss those claims with prejudice.

### 3. Claims Based on Trial Testimony and Grand Jury Testimony

O'Brien also brings several constitutional claims based on testimony given by witnesses before the grand jury and at his criminal trial. Specifically, he challenges the testimony of Murphy, Kane, and Special Agents Gill and Huffman. However, witnesses are entitled to absolute immunity from liability for alleged constitutional violations in connection with their testimony at trial or before the grand jury. *See Rehberg v. Paulk*, 566 U.S. 356, 359 (2012); *Mishra v. Fox*, 197 F. App'x 167, 168 (3d Cir. 2006) (per curiam) (citing *Briscoe v. LaHue*, 460 U.S. 325, 345-45 (1983). Accordingly, there is no legal basis for O'Brien's claims predicated on the testimony of witnesses, so the Court will dismiss those claims with prejudice.

### 4. Claims Based on Seizure of the HBOT

The Court understands O'Brien to be raising a Fourth Amendment claim based on the seizure of the HBOT machine from his office on September 14, 2011. Pennsylvania's two-year statute of limitations applies to O'Brien's *Bivens* claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers*, 855 F.2d 1080, 1087 n.3 (3d Cir. 1988). The limitations period began to run when O'Brien "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Here, O'Brien knew or should have known of the events giving rise to his claims at the time of the seizure of his property. However, he did not file this civil action until April 27, 2018, more than two years

after his claims accrued.[5] The Court will therefore dismiss O'Brien's claims related to the seizure of the HBOT machine as time-barred.

### 5. Claims Based on Use of Informant and Undercover Agents

O'Brien also appears to be raising Fourth Amendment claims based on allegations that undercover agents and a confidential informant visited his office and taped conversations with him without first obtaining a warrant. Those conversations were part of the evidence against O'Brien that led to his indictment and conviction. Notably, on January 6, 2016, O'Brien filed a motion in his criminal case seeking, among other things, to suppress the recordings made by undercover agents or informants during their visits to his office on the basis that those recordings violated the Fourth Amendment. *See United States v. O'Brien*, Crim. A. No. 15-21-1 (ECF No. 279). Judge Quiñones denied that motion in an Order entered February 18, 2016, because the Fourth Amendment and 18 U.S.C. § 2511(2)(c) permit warrantless undercover recordings made for law enforcement purposes by a consenting law enforcement agent or a consenting individual. *Id.* (Feb. 18, 2018 Order, ECF No. 320 (citing 18 U.S.C. § 2511(2)(c) and *Hoffa v. United States*, 385 U.S. 293 (1966)).

For the same reasons they failed in his criminal case, O'Brien's Fourth Amendment arguments fail in this case. Furthermore, O'Brien's filings in his criminal case make clear that he knew about the alleged constitutional violations more than two years before he filed this civil action, so the claims are also time-barred.

### 6. Other *Bivens* claims

To the extent O'Brien is raising other claims based on constitutional deficiencies in his

---

[5] Pursuant to the prison mailbox rule, a prisoner's complaint is considered filed at the time he or she hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). The Court received O'Brien's initial Complaint on April 27, 2018, and it is dated April 27, 2018.

9

criminal proceeding and/or trial, he may not proceed on those claims at this time. "[T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted). That principle extends to claims under *Bivens*. *See Hall v. Loretto*, 609 F. App'x 51, 53 (3d Cir. 2015) (per curiam) ("[T]he District Court properly dismissed the complaint as *Heck*-barred because success on the *Bivens* and FTCA claims would necessarily imply the invalidity of the fact and the duration of his confinement, which have not been elsewhere invalidated" (citing *Lora-Pena v. FBI*, 529 F.3d 503, 505 n.2 (3d Cir. 2008))). As O'Brien's convictions remain intact, any *Bivens* claims that would undermine those convictions are premature because they are not cognizable at this time.

## B. RICO Claims

In support of his RICO claims, O'Brien alleges the Health Care Fraud Task Force that investigated him was an enterprise that obstructed justice and obstructed a criminal investigation, causing him to lose his business by virtue of his arrest, conviction, and incarceration. The federal civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter[, which prohibits racketeering activity,] may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). "In order to plead a violation of § 1962(c), [a plaintiff] must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kolar v. Preferred Real Estate Investments, Inc.*,

361 F. App'x 354, 362 (3d Cir. 2010) (per curiam). "The RICO statute defines a 'pattern' of racketeering activity as requiring 'at least two acts of racketeering activity' within a ten year period." *Tabas v. Tabas*, 47 F.3d 1280, 1290 (3d Cir. 1995) (en banc) (quoting 18 U.S.C. § 1961(5)). "[T]o establish a 'pattern' of predicate acts, [a plaintiff] must allege that the acts are related, and amount to or pose a threat of continued criminal activity." *Kolar*, 361 F. App'x at 363.

Here, O'Brien indicates that the predicate acts upon which he relies are "obstruction of justice 18 U.S.C. at 1503 and obstruction of criminal investigation 18 U.S.C. at 1510." (Am. Compl. at 23, ¶ 88.) A prima facie case of obstruction of justice under § 1503(a) requires the following elements: "(1) the existence of a judicial proceeding; (2) knowledge or notice of the pending proceeding; (3) acting corruptly with the intent of influencing, obstructing, or impeding the proceeding in the due administration of justice; and (4) the action had the 'natural and probable effect' of interfering with the due administration of justice." *United States v. Sussman*, 709 F.3d 155, 168 (3d Cir. 2013). Section § 1510(a) provides that "[w]hoever willfully endeavors by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator" is guilty of obstructing a criminal investigation. Notably, "*Heck*'s bar [*i.e.*, the prohibition on filing constitutional claims that would necessarily imply the invalidity of intact convictions] cannot be circumvented by substituting a supposed RICO action for . . . *Bivens* claims ineffectually designed for the same purpose." *Swan v. Barbadoro*, 520 F.3d 24, 26 (1st Cir. 2008); *Franco v. City & Cty. of San Francisco*, No. C 10-04768 WHA, 2012 WL 3010953, at *3 (N.D. Cal. July 23, 2012) ("The rationale of *Heck* applies to RICO and conspiracy claims.").

11

O'Brien's RICO claims are at least partially barred by *Heck*. To the extent he is claiming that the Defendants obstructed justice in connection with their testimony during grand jury and/or trial proceedings, his claims fail because success on those claims would necessarily imply the invalidity of O'Brien's convictions. *See Rouser v. Johnson*, 36 F.3d 90, 1994 WL 523784, at *4 (5th Cir. 1994) (unpublished per curiam decision) (*Heck* barred claim that United States Attorney's Office violated RICO in connection with plaintiff's criminal prosecution and conviction by obstructing justice in violation of § 1503). Although claims related to the criminal investigation against O'Brien may not be barred by *Heck*, the Amended Complaint does not allege conduct amounting to obstruction of criminal investigation under § 1510. None of the Defendants are accused of employing bribery to prevent the communication of federal criminal violations to the appropriate authorities in order to impede a federal investigation. Rather, O'Brien raises his claims against federal authorities *for* investigating him as opposed to any obstruction of an investigation. In sum, O'Brien has not pled a RICO claim.

### C. FTCA Claims

O'Brien indicates that he is bringing FTCA claims against the United States "for misrepresentation, deceit, slander, libel, abuse of process, malicious prosecution, false arrest, false imprisonment, and interference with contract rights" based on acts of agents of HHS, FDA, FBI and DOJ.[6] (Am. Compl. at 24, ¶ 106.) The FTCA partially waives the federal government's sovereign immunity to allow liability for the torts of federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "However, that broad waiver is limited by a number of

---

[6] The United States is the only proper defendant in a FTCA action. *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008).

exceptions, which [the Third Circuit has] construed as akin to affirmative defenses." *Pellegrino v. United States Transp. Sec. Admin. , Div. of Dep't of Homeland Sec.*, No. 15-3047, 2018 WL 3371699, at *4 (3d Cir. July 11, 2018). One of those exceptions, "the 'intentional tort exception' preserves the Government's immunity for '[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.'" *Id.* (quoting 28 U.S.C. § 2680(h) (footnote omitted)). That exception, however, itself contains an exception that waives immunity for certain intentional torts—namely "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution"—committed by "investigative or law enforcement officers." 28 U.S.C. § 2680(h).

As the Government's sovereign immunity is preserved for the intentional torts of libel, slander, misrepresentation, deceit, and interference with contract rights, the Court lacks jurisdiction to the extent O'Brien is pursuing such claims under the FTCA. *Pellegrino*, No. 15-3047, 2018 WL 3371699, at *8 ("[T]he law enforcement proviso covers just a subset of the torts listed in the intentional tort exception."). Furthermore, in accordance with the principles announced in *Heck*, FTCA claims are not cognizable if success on those claims would necessarily imply the invalidity of a plaintiff's intact convictions.[7] *See Erlin v. United States*, 364 F.3d 1127, 1132 (9th Cir. 2004) ("The interests the Supreme Court identified in *Heck* require

---

[7] The Third Circuit has not addressed the issue in a precedential opinion, but has applied *Heck* in the FTCA context in non-precedential opinions. *See Ruiz v. United States*, 664 F. App'x 130, 134 (3d Cir. 2016) (per curiam) (*Heck* "applies in the context of Ruiz's FTCA claim because a judgment that his good conduct time has been miscalculated or improperly deducted would raise the same problems that led the Supreme Court to hold in *Heck* and *Edwards* that no constitutional civil rights cause of action accrued"); *Hall*, 609 F. App'x at 53 ("[T]he District Court properly dismissed the complaint as *Heck*-barred because success on the *Bivens* and FTCA claims would necessarily imply the invalidity of the fact and the duration of his confinement, which have not been elsewhere invalidated"). *Dare v. United States*, 264 F. App'x 183, 185 (3d Cir. 2008) (per curiam) (applying *Heck* to FTCA claims).

13

us to impose the same restriction on FTCA claims that *Heck* imposed on § 1983 actions."); *Parris v. United States*, 45 F.3d 383, 385 (10th Cir. 1995) ("We conclude the FTCA, like § 1983, is 'not [an] appropriate vehicle[ ] for challenging the validity of outstanding criminal judgments.'"). Accordingly, O'Brien's FTCA claims based on his prosecution, conviction, and imprisonment after the initiation of process against him are barred because success on those claims would necessarily imply the invalidity of his convictions. That includes his claims based on the allegedly false or misleading witness testimony and any claims based on the withholding of exculpatory evidence or information.

Although *Heck* does not necessarily bar false arrest or false imprisonment claims, O'Brien was arrested and detained pursuant to legal process. The docket for his criminal case reflects that he was indicted on January 20, 2015, arrested on January 29, 2015 pursuant to a bench warrant, and arraigned on February 3, 2015. *See United States v. O'Brien*, Crim. A. No. 15-21-1 (ECF Nos. 1, 6 & 14). Accordingly, his claims are all, essentially, malicious prosecution claims, that are barred by *Heck*. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("[A] false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges"); *Heck*, 512 U.S. at 484 ("[U]nlike the related cause of action for false arrest or imprisonment, [a cause of action for malicious prosecution] permits damages for confinement imposed pursuant to legal process."); *Morales v. Busbee*, 972 F. Supp. 254, 266 (D.N.J. 1997) ("The 'legal process' that separates a false arrest/imprisonment claim from a malicious prosecution claim may be in the form of an arrest warrant, an arraignment, or an indictment.").

In any event, even if O'Brien had cognizable claims based on his arrest and initial detention, those claims are time-barred. "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). The Third Circuit has recently interpreted that statute to require that "a claimant file *both* a claim with the federal agency within two years of the tort *and* a suit within six months of the agency's denial." *Sconiers v. United States*, No. 17-3440, 2018 WL 3543462, at *2 (3d Cir. July 24, 2018).

Here, O'Brien was arrested on January 29, 2015 and arraigned on February 3, 2015. *See United States v. O'Brien*, Crim. A. No. 15-21-1 (ECF Nos. 6 & 14). His false arrest and false imprisonment claims—to the extent he had any—accrued at that time. *See Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("[A] false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges"); *LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) (per curiam) ("Based on his allegations, LeBlanc's claim of false imprisonment began to accrue on that night, too, and could not continue to accrue after he was arraigned on April 3, 2008"); *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) (false arrest and false imprisonment claims accrued on date of arrest and detention before process). However, he did not file his claims with the relevant agencies until May 30, 2017, which is more than two years after his claims accrued.

15

Accordingly, any FTCA claims that O'Brien might have based on conduct that occurred prior to his arraignment are time-barred.[8]

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss O'Brien's Amended Complaint. He will not be given leave to amend because amendment would be futile. An appropriate order follows, which shall be docketed separately.

BY THE COURT:

*/s/ Wendy Beetlestone*
**WENDY BEETLESTONE, J.**

---

[8] Nothing in the Amended Complaint suggests a basis for tolling. O'Brien was capable of filing numerous motions in his criminal case so he would also have been able to timely file his claims with the relevant agencies.

16